COBB, Judge,
dissenting.
The trial court in this case entered a comprehensive and detailed judgment which explained, inter alia, the court’s reasoning for the denial of alimony:
The evidence shows that the parties both worked during the entire marriage. The parties are both Cuban refugees. The Husband has a fourth grade education, after which time he worked in the fields in Cuba. He joined the anti-Castro Cuban resistance in Cuba, and fled to the mountains for several years to escape the Castro government’s death threats against him. When he arrived in the United States, he went to Newark, New Jersey, where he held several jobs involving manual labor, and finally went to work for a grocery store. He bought the business and operated it for a few years. He also bought the building housing the grocery store, which also contained, on the second floor, his home and other rental apartments, as well as some rental garages.
In an unfortunate period of the parties’ fives, the Husband was convicted of a federal offense, and was incarcerated for a period of time. He had to sell the grocery store business, but kept the building. When he came back, he did some manual labor jobs around Newark, and was able to buy a piece of property and build a house *359 on it, for investment. This was sold for a profit.
He took the profit and made his way to Palm Coast, where he started buying land in 1986. He arrived at Palm Coast at a time of great real estate activity, and formed Sunshine Land Corporation, for the purpose of buying and selling lots in Palm Coast. This business flourished from 1986 through 1990, with the general real estate market in Palm Coast. However, from 1990 until the present, the real estate market kept declining both in its activity and in the real estate values. By the time of the trial of the issues, Sunshine Land Corporation had been virtually liquidated, to pay for the living expenses of the parties.
The Wife worked continuously throughout the marriage, for Hudson Tool and Die Company, in Newark, New Jersey. Hudson Tool and Die has an operation in Or-mond Beach. The Wife could have worked there when she came to Florida. The Wife testified, however, that she hurt herself at the Newark airport and that she was no longer able to work, and she “retired” in 1991, when she moved to Palm Coast. However, no competent evidence was introduced by a physician or rehabilitation therapist regarding the Wife’s inability to work. The court finds that the wife has an ability to earn income compatible with her prior earning history. The Wife testified that she had a claim against the Newark airport authority for her injuries, one element of which is the loss of her income earning capacity. The court finds that this claim should be distributed to the Wife, to the exclusion of the Husband. This will compensate her should the Wife’s injury be found to have affected her income earning capacity.
Although there was much testimony and evidence regarding the parties’ income from Sunshine Land Corporation, there was no evidence regarding the Husband’s income earning history or capacity unconnected with Sunshine Land Corporation. Taking into account his education level, his work history with menial jobs and his prior record, the court finds that his income earning capacity unconnected to Sunshine Land Corporation is far below what the parties made during the Palm Coast boom years. There was evidence that he can operate heavy machinery, but no evidence was introduced regarding how much he could earn doing that. There was evidence of an aborted roof tile business he operated with his brother-in-law in Palm Coast, Apex Roof and Tile Corp., which lost money and had been closed and liquidated. There was evidence of a B & W Construction business which the Husband had with one William Ihringer. That business built one house, and stopped doing business.
There was no evidence of how much that business earned, nor of its value.
Therefore, the Court is unable to find that either party has a superior income or income earning capacity when compared to each other. What appears to this Court, is that the parties have been hard working uneducated people, who, for a limited period of time were the beneficiaries of the real estate boom in Palm Coast, from 1986 through 1990, and were just as much the victims of the real estate decline from 1991 through 1993. This court is not going to ascribe to either of them a greater income earning capacity than their education and work history justifies, simply because they happened upon Palm Coast at the beginning of a boom cycle. The court looks at that as a one-time occurrence the benefits of which were shared equally and have by now been totally dissipated by the market trends since 1990.
The trial court also awarded primary custody of the parties’ 16 year old son to the husband and ordered no support payments from the wife. Out of aggregate marital assets of $492,000 and total marital liabilities of $19,500, the court awarded the wife $306,-400 of the assets as opposed to $186,000 for the husband (this disparity is accounted for by a debit of $115,000 to the husband for monies he gave to his relatives). The court also allocated $1,500 of the liabilities to the wife as opposed to $18,000 to the husband. The court noted that rental property in New Jersey awarded to the wife could generate income in excess of $3,000 per month. The court found that the parties, at the time of *360 dissolution, had equal income earning capacities.
I would affirm the well-reasoned judgment of the trial court.